# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sue Davis-Haas, Richard H. Haas, :
Ida C. Smith, Zildia Perez, Leon :
Perez, Donna Galczynski, Kevin :
Galczynski, Alan Ganas, Renee :
Froelich, Scott Matthews, Patricia :
J. Miravich, John J. Miravich and :
William Ryan, :
     Appellants :
         : No. 1739 C.D. 2016
    v.   : Argued: June 5, 2017
         :
Exeter Township Zoning Hearing :
Board and MetroDev V, LP and :
Exeter Township :

BEFORE: HONORABLE ROBERT SIMPSON, Judge
    HONORABLE ANNE E. COVEY, Judge (P.)
    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**     **FILED: July 12, 2017**

   In this, the most recent of several related appeals in this land use case, Objectors[1] ask whether the Court of Common Pleas of Berks County[2] (trial court) erred in affirming a decision of the Exeter Township Zoning Hearing Board (ZHB) that sustained MetroDev V, LP's (Landowner) procedural validity challenge. Objectors argue the trial court erred in failing to: (1) enforce a settlement agreement reached by the parties; (2) find that Landowner's 2005 procedural

---

[1] Objectors are Sue Davis-Haas, Richard H. Haas, Ida C. Smith, Zildia Perez, Leon Perez, Donna Galczynski, Kevin Galczynski, Alan Ganas, Renee Froelich, Scott Matthews, Patricia J. Miravich, John J. Miravich and William Ryan.

[2] The Honorable Madelyn S. Fudeman presided.

challenge to and the process Landowner followed was defective and Objectors' rights were violated; and (3) determine Landowner lacked standing to prosecute its procedural validity challenge. Upon review, we affirm.

## I. Background

This case has an extensive procedural history, most of which was set forth in this Court's decision in Metro Dev V, LP v. Exeter Township Zoning Hearing Board (Pa. Cmwlth., No. 1367 C.D. 2013, filed July 24, 2014), 2014 WL 3697529 (unreported). There, we explained that Objectors own properties adjacent to Landowner's proposed residential development. Landowner's property (subject property) consists of approximately 46.36 acres[3] in an area where the boundary lines of the Township of Exeter (Township), and two surrounding municipalities, Lower Alsace Township and Alsace Township, meet.

Prior to July 25, 2005, the Township's Zoning Ordinance No. 500 (old ordinance) was in effect. Under the old ordinance, the subject property was zoned low density residential. On July 25, 2005, the Township enacted Zoning Ordinance No. 596 (new ordinance), which changed the zoning classification of the property from low density residential to suburban residential. The changed classification had the practical effect of reducing the number of residential lots permitted on the subject property from 30 to 7.

---

[3] As explained more fully below, in 2012, Landowner sold a 0.51-acre portion of its property, but retained the remainder.

In August 2005, Landowner filed a challenge to the validity of the new ordinance with the ZHB pursuant to former Section 10909.1(a)(2) of the Pennsylvania Municipalities Planning Code (MPC)[4] alleging procedural irregularities in its adoption.

In September 2005, a preliminary subdivision plan was submitted for a residential development on the subject property called "Windy Willows," comprising 34 residential lots, 26 of which were located within the Township. The plan was based on a sketch plan that was previously submitted while the old ordinance was still in effect. Waivers were sought from the Township's Subdivision and Land Development Ordinance (SALDO).

On September 26, 2005, the Township and Landowner entered into a settlement agreement in which Landowner agreed to withdraw its procedural validity challenge to the new ordinance in exchange for the Township's agreement to review and potentially approve the plan under the terms of the old ordinance. Shortly thereafter, Landowner withdrew its validity challenge.

In July 2008, the Township approved Landowner's plan, subject to certain conditions. The Township also granted waivers from certain SALDO sections but it reserved its determination of other waiver requests until the final plan approval stage. Pursuant to the terms of the settlement agreement, the Township reviewed the plan under the old ordinance.

---

[4] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, as amended, formerly 53 P.S. §10909.1(a)(2), deleted by the Act of July 4, 2008, P.L. 319.

Objectors subsequently filed a land use appeal with the trial court. Landowner intervened. The Township filed a motion to dismiss the appeal, arguing Objectors lacked standing to appeal because they did not appear in the proceedings below. The trial court granted the Township's motion and dismissed Objectors' appeal. On appeal, this Court held Objectors, as adjacent landowners, had substantive standing to object to subdivision plans both before the Township and in land use appeals, even though they did not appear before the Township or its Planning Commission. Miravich v. Twp. of Exeter 6 A.3d 1076 (Pa. Cmwlth. 2010) (Miravich I). We reversed and remanded.

On remand, the trial court denied Objectors' land use appeal. The trial court determined the Township did not err by reviewing the plan under the old ordinance based on the terms of the settlement agreement because municipalities are legally authorized to settle challenges to zoning ordinances. The trial court also upheld the Township's grant of waivers to Landowner, and it held Landowner had standing to submit the plan.

Objectors filed another appeal to this Court, asserting: (1) the proper procedure to challenge the new ordinance was to have a hearing before the ZHB; (2) the settlement agreement was an invalid exercise of the Township's authority to settle the challenge to the new ordinance; (3) the Township erred by applying the old ordinance instead of the new ordinance to the plan; (4) the Township's approval of the plan was defective; and, (5) Landowner lacked standing to seek preliminary plan approval. Miravich v. Twp. of Exeter 54 A.3d 106 (Pa. Cmwlth. 2012) (Miravich II).

4

Ultimately, this Court held the Township lacked authority to determine which zoning ordinance would be applied to the plan for three reasons. First, Landowner's procedural challenge fell within the exclusive jurisdiction of the ZHB, not the Township. Additionally, Landowner filed its challenge with the ZHB and did not bring the matter before the Township as a substantive validity challenge. Finally, even if Landowner filed its challenge with the Township, the Township was required to hold a hearing within 60 days of the request and provide notice of the hearing, events which did not occur. This Court concluded that, by entering into the settlement agreement with Landowner and agreeing the old ordinance would apply to the plan, the Township usurped the ZHB's role and violated the MPC's notice and hearing provisions. Citing the trial court's opinion, this Court also noted that the parties did not dispute that the enactment process for the new ordinance was procedurally defective.

This Court also held that the settlement agreement was an invalid exercise of the Township's authority to settle the procedural validity challenge to the new ordinance. We determined the settlement agreement was akin to contract zoning, which the Pennsylvania Supreme Court expressly disapproved in Carlino v. Whitpain Investors, 453 A.2d 1385 (Pa. 1982).

Further, this Court held the Township erred when it considered the plan under the old ordinance rather than the new ordinance. We concluded Landowner submitted its plan after passage of the new ordinance; therefore, under Section 508(4)(i) of the MPC, 53 P.S. §10508(4)(i), which provides that an application for subdivision approval is governed by the ordinance in effect at the

5

time the application is filed, the new ordinance applied. Additionally, as to Objectors' arguments that the Township's approval of the plan was defective, this Court rejected some arguments and accepted others.[5]

Thereafter, both parties filed petitions for allowance of appeal to the Supreme Court, which were ultimately denied. The plan approval appeal proceeded on remand. Meanwhile, however, while the petitions for allowance of appeal were pending, Landowner sent a letter to the ZHB requesting that it conduct a hearing on the procedural validity challenge Landowner filed in 2005 and subsequently withdrew pursuant to the settlement agreement.[6]

The ZHB held a hearing on the validity challenge at which it heard testimony and received exhibits regarding the legal status of the 2005 challenge and the relevancy of this Court's decision in Miravich II declaring the settlement agreement invalid. The ZHB concluded there was nothing before it to consider because Landowner unconditionally withdrew its challenge in October 2005. The

---

[5] More particularly, this Court rejected Objectors' assertion that sewage certification was required at the initial stage. This Court held that Section 512.1 of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10512.1, vests discretion with the Township to grant or deny any and all waivers sought by Landowner. The Court concluded that, because the Township did not explain the nature of the hardship for the waivers granted, it did not provide a proper basis for this Court to review whether it erred or abused its discretion in granting the waivers. Finally, this Court held Landowner had standing as an equitable owner to seek preliminary plan approval.

[6] Landowner asserted the matter was remanded from this Court and that the validity challenge was filed before a 2008 statutory change. In 2008, the General Assembly repealed Section 909.1(a)(2) of the MPC, 53 P.S. §10909.1(a)(2), which provided that procedural validity challenges were to be heard before a ZHB. Currently, Section 5571.1 of the Judicial Code, 42 Pa. C.S. §5571.1, contains the procedures governing procedural validity challenges and provides that such challenges are to be initiated in common pleas courts.

6

ZHB also held it could not exercise equity powers to conclude Landowner's withdrawal of the challenge was nullified by this Court's determination that the settlement agreement was invalid because zoning boards lack equity powers.

Landowner appealed to the trial court, challenging both the ZHB's denial based on jurisdictional grounds and the validity of the new ordinance. The trial court determined Landowner properly filed an appeal within 30 days after the adoption of the new ordinance, which was only withdrawn after the parties reached a settlement agreement. Thus, the trial court remanded to the ZHB for a determination on the merits. The trial court explained the settlement agreement was a contract between Landowner and the Township, and when this Court held it was invalid in Miravich II, Landowner did not receive the benefit of its contractual bargain. As such, the trial court determined Landowner should be placed back to its original position, and the ZHB had jurisdiction to hear the 2005 procedural validity challenge. The trial court also determined that in Miravich II this Court intended the matter to be remanded to the ZHB because only the ZHB had jurisdiction over a procedural validity challenge filed in 2005.[7]

On further appeal by Objectors, this Court affirmed, holding, "[b]ecause the settlement agreement has been invalidated, unmaking the contract between [Landowner] and the Township by judicial order, equity requires that

---

[7] The trial court further stated the validity challenge was not barred by laches because the delay was caused by ongoing litigation and because Landowner properly relied on the Township's apparent authority as to its pursuit of its land development application. The trial court also held unclean hands did not apply as both the Township and the trial court found the settlement agreement valid.

7

[Landowner] must be returned to its position prior to execution of the settlement agreement. Therefore, the ZHB is required to decide the merits of the procedural validity challenge under the statutory procedure in effect in 2005." Metro Dev V, Slip Op. at 11, 2014 WL 3697529 at *5.[8]

Thereafter, the ZHB held hearings on Landowner's procedural validity challenge to the new ordinance. Ultimately, the ZHB sustained Landowner's procedural validity challenge, and it declared the new ordinance void *ab initio*. In so doing, the ZHB made the following relevant determinations.

In 2005, the Township undertook a project to amend its zoning ordinance. After various meetings, the Township decided to advertise for public hearing and enact a proposed ordinance to amend and restate the Township zoning ordinance and the zoning map in their entirety (collectively, the draft ordinance).

The Township advertised a notice in the Reading Eagle, a newspaper of general circulation in the area, on June 29 and July 6, 2005, which stated:

> The Exeter Township Board of Supervisors [(Supervisors)] will hold a public hearing at 7:00 P.M. on July 18, 2005 to hear [p]ublic [c]omment on the [draft ordinance]. The [Supervisors] will consider adoption of the [draft ordinance] at their July 25, 2005 meeting. Full text of the [draft ordinance] is available for public inspection at the Township Office, 4974 DeMoss Road,

---

[8] Additionally, in a separate (but related) decision, this Court remanded to the Township's governing body following an appeal relating to Landowner's preliminary subdivision plan, and we stayed that proceeding pending the outcome of Landowner's procedural validity challenge to the new ordinance. See Miravich v. Twp. of Exeter (Pa. Cmwlth., No. 2066 C.D. 2013, filed July 24, 2014), 2014 WL 3697542 (unreported) (Miravich III).

8

Reading, PA 19606. If you require special accommodations in order to attend Township meetings, please call the Township office at 610-779-5660. The Township will make every reasonable attempt to accommodate you.

Troy S. Bingaman, Manager/Secretary.

ZHB Op., 9/24/15, Finding of Fact (F.F.) No. 28 (Reading Eagle Notice).

The Reading Eagle Notice did not provide "the time and place" of the meeting on July 25, 2005 in which the Supervisors would consider enactment of the draft ordinance. F.F. No. 29. Also, the Reading Eagle Notice did not provide either "the full text" of the draft ordinance or "a brief summary which lists provisions [of the draft ordinance] in reasonable detail[.]" F.F. No. 30. Although the Reading Eagle Notice did indicate that copies of the Draft Ordinance could be obtained at the Township Building, the Notice did not state "copies of the proposed ordinance or amendment may be examined without charge or obtained for a charge not greater than the cost hereof." F.F. No. 31. Further, the Reading Eagle Notice was prepared by the Township Manager, not the Township Solicitor. The draft ordinance provided for changes to the zoning map that did not constitute comprehensive rezoning as only a few areas of the Township were rezoned.

The ZHB further determined a notice of the public hearing on July 18, 2005 and proposed enactment at the July 25, 2005 meeting were not conspicuously posted along tracts of land that were the subject of zoning map changes under the draft ordinance. Also, a notice of the public hearing on July 18, 2005 and proposed enactment at the July 25, 2005 meeting was not mailed to the owners of the tracts of land within the Township that were the subject of zoning map changes

9

under the draft ordinance. An attested copy of the draft ordinance or any revised version was not filed in the County Law Library at any time prior to July 25, 2005. Additionally, a copy of the full text of the draft ordinance or any revised version was not filed with the Reading Eagle at any time prior to July 25, 2005.

On July 18, 2005, the Supervisors held a public hearing at which time the draft ordinance was reviewed. At the hearing, the Supervisors made several substantial changes to the draft ordinance including changes to uses within zoning districts, changes to definitions and changes to objective criteria for uses. The Township Planning Commission reviewed the draft ordinance with the changes recommended at the July 18 hearing at a workshop meeting on July 20, 2005. At that time the Township Planning Commission recommended additional changes to Sections 400 and 500 of the draft ordinance.

On July 25, 2005, the Supervisors held a public meeting at which time the draft ordinance (with the changes recommended at the July 18 hearing and the July 20 Planning Commission workshop meeting) was considered for adoption. As a result of public comment at the July 25 Supervisors' meeting, the draft ordinance was revised again. F.F. No. 42.

On July 25, 2005, the Supervisors adopted the new ordinance, which was in the form and content of the draft ordinance with the changes recommended at the July 18 public hearing, the July 20 Planning Commission workshop meeting, as well as the July 25 Supervisors' meeting, and served to amend and restate the zoning ordinance in its entirety.

10

Between July 18 and prior to the adoption of the new ordinance on July 25, neither any of the revised versions of the draft ordinance nor the final version of the new ordinance were: (a) submitted to the County Planning Commission for review; (b) submitted to the Township Planning Commission for review of the changes made at the July 25 meeting; (c) submitted to the County Law Library to be available for public inspection; (d) submitted to the Reading Eagle to be available for public inspection; (e) re-advertised in the Reading Eagle for a public hearing or enactment at a public meeting; (f) posted conspicuously along tracts in the Township that were the subject of zoning map changes; or, (g) mailed to the owners of the tracts of land within the Township that were the subject of zoning map changes.  F.F. No. 44.

The new ordinance became effective on August 5, 2005, 10 days after its passage by the Supervisors.  On August 24, 2005, Landowner filed its procedural validity challenge with the Township, which was within 30 days of the new ordinance's effective date.

The ZHB explained that a procedural challenge must be brought within 30 days of an ordinance's effective date.  42 Pa. C.S. §5571(c)(5).  Where a challenge is filed within 30 days of the ordinance's effective date, the party alleging a defect must prove there was a failure to strictly comply with statutory procedure.  However, where a challenge is filed outside the 30-day period, a party must prove its right to an exemption from the deadline.  This is accomplished by evidence showing the municipality's "failure to substantially comply" with applicable procedures prevented the public from commenting on the ordinance.

11

<u>Hawk v. Eldred Twp. Bd. of Supervisors</u>, 983 A.2d 216 (Pa. Cmwlth. 2009). If the challenging party meets its burden of proof, the challenged ordinance is void *ab initio*. <u>Id.</u>

Section 609 of the MPC, 53 P.S. §10609, establishes the procedures to be followed in the enactment process of zoning ordinance amendments. Additionally, Section 610 of the MPC, 53 P.S. §10610, establishes the requirements for publication, advertisement and availability of proposed zoning ordinances.

Here, the ZHB found Landowner submitted credible evidence to meet its burden of establishing that its application was filed within 30 days of the effective date of the new ordinance, and that the Township did not strictly comply with the required statutory procedure. Specifically, the ZHB determined the Township did not strictly comply with the required statutory procedure in the enactment process of the new ordinance based on 11 defects, detailed more fully below. In light of these determinations, the ZHB sustained Landowner's procedural validity challenge, and it declared the new ordinance void *ab initio*. Objectors appealed to the trial court raising numerous issues.

Before the trial court, the parties engaged in settlement discussions and reached a tentative agreement; however, a final settlement agreement was not reached.

12

Ultimately, without taking additional evidence on Objectors' land use appeal, the trial court affirmed. Additionally, the trial court denied Objectors' motion to enforce the purported settlement agreement reached before the trial court. This appeal followed.

## II. Issues

On appeal,[9] Objectors assert the trial court erred in failing to: (1) enforce a settlement agreement reached by the parties after the trial court determined Landowner was unable to comply with one of the terms of the agreement; and, (2) find Landowner's 2005 procedural challenge to the new ordinance and the process Landowner followed was defective and Objectors' rights were violated where (a) substantial and actual notice of the new ordinance was provided to all Township residents; (b) substantial reliance was shown by Objectors that the new ordinance was properly enacted; and, (c) the defective process undertaken by Landowner denied Objectors due process. Objectors also argue the trial court erred in failing to conclude Landowner lacked standing to prosecute its 2005 procedural validity challenge where it sold the subject property.

## III. Discussion
### A. Purported 2016 Settlement Agreement
#### 1. Contentions

Objectors first argue the trial court erred or abused its discretion when it failed to enforce a 2016 settlement agreement reached by the parties following

---

[9] Where, as here, the trial court did not receive any additional evidence, this Court's review is limited to determining whether the ZHB committed an error of law or abuse of discretion. Oxford Corp. v. Zoning Hearing Bd. of Oxford, 34 A.3d 286 (Pa. Cmwlth. 2011).

13

Objectors' appeal of the ZHB's 2015 decision declaring the new ordinance procedurally invalid. Objectors assert Pennsylvania has a strong judicial policy in favor of voluntarily settling lawsuits. Mastroni-Mucker v. Allstate Ins. Co., 976 A.2d 510 (Pa. Super. 2009). Objectors contend settlement agreements are enforced according to principles of contract law. McDonald v. Ford Motor Co., 643 A.2d 1102 (Pa. Super. 1994). Under Pennsylvania law, a contract exists when parties exhibit mutual assent to the terms of an agreement. Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d 133 (Pa. 1999).

If a settlement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement, even if the terms are not yet formalized in writing. Mastroni-Mucker. The intent of the parties to a written contract is contained in the writing itself. Mace v. Atl. Refining & Mktg. Corp., 785 A.2d 491 (Pa. 2001). Moreover, after the parties reach a meeting of the minds as to the essential terms of their agreement, the existence of gaps in the contract will not vitiate it. See Commerce Bank/Pa. v. First Union Nat'l Bank, 911 A.2d 133 (Pa. Super. 2006). Thus, "[t]he law in this Commonwealth makes clear that … [i]f parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date." Shovel Transfer & Storage, 739 A.2d at 136 (internal quotations omitted); see also Commerce Bank.

Here, Objectors maintain, the parties agreed to the essential terms of a settlement. The parties did not contemplate any additional terms that needed to be agreed on as a condition precedent to enforceability. Objectors argue that before

14

the trial court, the parties made no effort to clarify or object to any of the terms of the proposal upon accepting it.

Objectors contend that, as admitted by Landowner, the parties entered into a settlement agreement. Reproduced Record (R.R.) at 25a-33a, 1123a-24a. The terms of that agreement were simple: (1) an entrance road would be moved; (2) Landowner would receive certifications from the three township engineers that the township boundary lines depicted on the plan were accurate; (3) Landowner would pay the immediately adjacent neighbors $60,000; and, (4) the parties would release each other, thus requiring Objectors not to further challenge Landowner's development. R.R. at 70a-77a. Objectors maintain Landowner itself sought enforcement of the settlement agreement, and it admitted in its motion that there was a "meeting of the minds." R.R. at 32a. Therefore, no basis exists to not enforce the essential terms of the settlement agreement.

Objectors contend Pennsylvania courts frequently enforce agreements that contemplate the execution of a formal contract with additional terms in the future. See, e.g., Shovel Transfer & Storage. Indeed, Objectors argue, when compared to other settlement agreements enforced under Pennsylvania law, the agreement here is much more definitive and clearly enforceable. See e.g., Hatalowich v. Redev. Auth. of Monessen, 312 A.2d 22, 24-25 (Pa. 1973) (acceptance of proposal created a contract despite the fact that parties intended to later execute formal document); Compu Forms Control, Inc. v. Altus Grp., 574 A.2d 618 (Pa. Super. 1990) (oral settlement agreement was enforceable even though the parties were unable to agree on, and execute, formal agreement). Here,

15

Objectors argue there can be no dispute that the parties entered into an agreement that was simply not yet reduced to a writing signed by the parties, but the parties agreed on all essential terms. See Commerce Bank, 911 A.2d at 147 (enforcing terms of draft settlement agreement where parties reached "meeting of the minds" regarding essential terms of the agreement).

Objectors further contend the term of the agreement relating to certification of municipal boundary lines was important to Objectors because they believed Landowner intentionally misrepresented the boundaries between the municipalities to allow more development in the Township given that it allows for smaller lots. Although this was not a specific legal issue before the trial court, Objectors maintain, the trial court agreed this term would be included so Objectors would provide Landowner a general release not to challenge Landowner's development again. Objectors argue Landowner's failure to comply with this term constituted a breach of the agreement; therefore, this case should be remanded to enforce the settlement agreement.

Landowner[10] responds that the trial court correctly held that a settlement agreement that cannot be performed is not enforceable as a matter of law. As detailed by the trial court, Landowner and the Township could not perform a material term of the proposed settlement agreement; as such, the contract could not be enforced. Landowner contends the trial court laid out the term that Landowner and the Township could not perform and the reasons the parties

_____

[10] The Township joins and adopts by reference the briefs filed by Landowner and the ZHB.

16

rejected the settlement proposal. As such, no meeting of the minds ever occurred; thus, nothing suggests the ability to enforce a settlement proposal.

Landowner argues it is critical to note that the settlement agreement Landowner sought to enforce through its motion was substantially different than the purported agreement Objectors now seek to enforce. In fact, Objectors never responded to the settlement's writing and the parties relied on a spoken agreement. Despite this discussion, Landowner asserts, throughout the entire summer of 2016—again to the delay of Landowner's development—the terms of the agreement continually changed. From the loss of lots in April, to the payment of funds in May, to boundary certifications in June and then to loss of lots again in July, Objectors repeatedly changed the terms of any agreement.

Moreover, Landowner maintains, as the draft agreements indicate, the Township always proposed a full release. R.R. at 72a-77a. However, at no time from April through June did Objectors respond to that requirement, until the motion to enforce settlement was filed. Essentially, Landowner argues Objectors want it both ways. They refused to settle in the midst of litigation, R.R. at 2a, and then they demanded enforcement of a purported settlement agreement after losing before the trial court.

As noted by the trial court, Landowner contends, the final version of the settlement agreement could not be satisfied by Landowner and the Township. As such, the agreement failed as a matter of law. See, e.g., West v. Peoples First Nat'l Bank & Trust Co., 106 A.2d 427 (Pa. 1954). Importantly, Landowner

17

argues, the cases Objectors cite in support of their position include scenarios involving a clear meeting of the minds where the only outstanding issue was a finalized writing. No meeting of the minds occurred here.

Landowner maintains that, as to the purported agreement, the trial court specifically referenced the boundary issue and made a finding that the parties could not survey the boundary in the manner demanded by Objectors. Thus, not all terms were satisfied. Landowner asserts our Supreme Court holds: "As with any contract, it is essential to the enforceability of a settlement agreement that 'the minds of the parties should meet upon all the terms, as well as the subject-matter, of the [agreement].'" Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999) (citing Onyx Oils & Resins, Inc. v. Moss, 80 A.2d 815, 817 (Pa. 1951)). Moreover, Landowner argues, the boundary issue was only one of several items upon which the parties could not agree, thus showing the settlement agreement was not enforceable as a matter of law.

For its part, the ZHB notes, although present and a party to the matter, it was not directly involved in negotiations and attempts to resolve the matter through the proposed settlement agreement before the trial court. Nevertheless, the ZHB opposes Objectors' argument that the trial court should have enforced the proposed settlement agreement. The ZHB joins Landowner's argument on this issue in support of the trial court's finding that the proposed settlement agreement was not enforceable based on the impossibility of performance of a material term.

18

## 2. Analysis

In resolving this issue, the trial court here explained (with emphasis added):

[Objectors] requested that this court enforce a settlement agreement reached amongst the parties in court in April, 2016, and reduced to writing, but never finalized. The agreement discussed in court contained financial terms and several other provisions, but it was never finalized, and no party performed any of the obligations contained in the agreement. A material term of that agreement required [Landowner] and [the Township] to obtain certification from the engineers of the three municipalities of each of the municipal boundaries as depicted on [Landowner's] preliminarily approved land development plans. [The Township] and [Landowner] were unable to obtain the certifications, but proposed in the alternative, in accordance with the recommendations of their relative engineers, that determination of the municipalities' boundaries be obtained in accordance with the procedures [set forth in] [S]ection 302 of the [Second Class Township Code[11]]. This proposal was rejected by [Objectors] who insisted that they would not entertain any agreement absent certification from the engineers.

[The] Township and [Landowner] could not perform a material term of the settlement agreement. 'If performance on one side or another of a contract becomes excusably impossible while the transaction is wholly executory on both sides, not only is the contract discharged, but neither party is subject to obligation of any kind.' [West, 106 A.2d at 433] *citing* Williston on Contracts, vol. 6 (Rev. Ed.). See also, Ellwood City Forge Corp. v. Fort Worth Heat Treating Co., Inc., [636 A.2d 219 (Pa. Super. 1994)]. Accordingly, impossibility of performance of the material term rendered the agreement, if indeed any was reached, terminated.

---

[11] Act of May 1, 1933, P.L. 103, as reenacted and amended, 53 P.S. §65302.

Tr. Ct., Slip Op., 9/15/16, at 9.

Despite Objectors' claims that the parties reached a settlement agreement after Objectors' appeal of the ZHB's decision invalidating the new ordinance, Objectors point to no record evidence to support their claim that an enforceable agreement actually existed. Objectors note that, in June 2016, Landowner filed a motion to enforce the purported settlement agreement between the parties in which Landowner indicated there was a "meeting of the minds." See R.R. at 32a. Shortly thereafter, the trial court issued an order marking the case settled and discontinued. See Certified Record (C.R.), Item #23.

However, in response to Objectors' motion for reconsideration, C.R., Item #24, the trial court vacated its order marking the case settled and discontinued, and it ordered the parties to finalize settlement within 30 days. C.R., Item #28. Around the same time, the trial court issued orders scheduling settlement conferences for July 2016. C.R., Item #s 25-27. The trial court subsequently scheduled a hearing for July 25, 2016 on Landowner's petition to post bond, and it ordered the parties to file briefs on Objectors' land use appeal. C.R., Item #s 29, 30. The trial court then issued its decision denying Objectors' land use appeal and rejecting Objectors' assertion that the trial court should enforce the purported settlement agreement reached by the parties based on the above-quoted rationale.

Unfortunately, the record does not contain any transcripts from the proceedings before the trial court. Thus, it is unclear whether adequate support exists for the trial court's factual determination that it was impossible for the

20

parties to perform an essential term, *i.e.*, obtaining engineer certifications from the municipal engineers of each of the municipal boundaries depicted on Landowner's preliminarily approved land development plans.

Nevertheless, in their brief to this Court, Objectors do not directly dispute the underlying basis for the trial court's factual determination on this point. Rather, they assert the parties' failure to comply with that term of the agreement rendered the agreement "breached not voided." Appellants' Br. at 20. Thus, Objectors challenge the result when a material term of an agreement is deemed impossible to perform.

Section 261 of the Restatement (Second) of Contracts defines "legal impossibility" as follows:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate to the contrary.

RESTATEMENT (SECOND) OF CONTRACTS §261 (1981).

Thus, "[u]nder the doctrine of impossibility of performance[12] applicable to the construction of contracts, if, after a contract is made, a party's

---

[12] "Impossibility of performance" means "not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, or loss involved." In re Busik, 759 A.2d 417, 423 n.9 (Pa. Cmwlth. 2000) (quoting West v. Peoples First Nat'l Bank & Trust Co., 106 A.2d 427, 432 (Pa. 1954)). "Impossibility of performance," however, does not include mere inconvenience even though it may work a hardship. Id. (citing Int'l Brotherhood of **(Footnote continued on next page…)**

21

performance is made impracticable through no fault of his or her own, the parties may waive the difficulties or terminate the agreement, ending all contractual obligations." In re Busik, 759 A.2d 417, 423 (Pa. Cmwlth. 2000) (citing West). Further, "when impracticability excuses a party's duty to perform, it ends all contractual obligations under the contract." Lichtenfels v. Bridgeview Coal Co., 531 A.2d 22, 26 (Pa. Super. 1987) (citing West; RESTATEMENT (SECOND) OF CONTRACTS § 377 cmt. a (1981) ("in cases of impracticability or frustration the other party is also ordinarily relieved of any obligation of rendering the return performance that he has promised on the ground of failure of performance (§ 267)")).

Here, the trial court determined the performance of a material term of the purported settlement agreement was impracticable. Further, Objectors refused an alternative proposed procedure to satisfy this term, instead insisting they would not entertain any agreement absent certification from the municipal engineers. Tr. Ct., Slip Op., at 9. Under these circumstances, the trial court correctly determined that "impossibility of performance of [this] material term rendered the agreement, if indeed any was reached, terminated." Id.; see West. Objectors offer no persuasive reason to disturb the trial court's determination on this point.

---

**(continued…)**

Firemen & Oilers, Local 1201, AFL-CIO v. Bd. of Educ. of Sch. Dist. of Phila., 457 A.2d 1269 (Pa. 1983)). Nor does it include a party's financial inability to perform. Id.

## B. Procedural Validity Challenge to New Ordinance
### 1. Contentions

Objectors next argue Landowner's 2005 procedural challenge and the process it followed was defective and shows Objectors' rights were violated. They assert the purpose of a notice provision under the MPC is to prevent municipalities from enacting zoning ordinances that affect specific tracts of land without providing notice of their intention to act. Northampton Residents Assoc. v. Northampton Twp. Bd. of Supervisors, 322 A.2d 787 (Pa. Cmwlth. 1974).

Further, where the ordinance adopted is different from the ordinance included in the notice, it shall not be declared invalid if the changes in the ordinance finally adopted were largely inconsequential. Id. Also, the advertising of an ordinance complies with the MPC even if the full text of the ordinance is not included. Instead, only a brief summary of the principal provisions must be included. Graack v. Bd. of Supervisors of L. Nazareth Twp., 330 A.2d 578 (Pa. Cmwlth. 1975). Thus, where insignificant changes or amendments are made to a proposed ordinance after advertisement and public hearing, a re-advertisement and second public hearing are not required. Id. In other words, Objectors contend, a zoning ordinance is not invalid because certain amendments to the advertised ordinance were made at the public meeting without re-advertising. This is particularly true where the changes are *de minimis*. Id.

Objectors maintain that in Nockamixon Township v. Nockamixon Township Zoning Board, 8 A.3d 434 (Pa. Cmwlth. 2010), this Court upheld a trial court's reversal of a zoning board's decision to sustain a procedural challenge to a zoning ordinance based in part on a claim of improper notice. There, this Court

23

recognized it was undisputed that the township violated the MPC because it did not provide timely notice of the meeting in which the ordinance was considered. However, this Court reasoned that in recent years courts softened the result of failure to strictly comply with notice requirements and instead relied on the concept of appropriate due process and likewise whether the due process right of others would be denied when they relied on and were bound by what appeared to be a valid ordinance. Id.; see also Bartkowski Inv. Grp., Inc. v. Bd. of Comm'rs of Marple Twp., 18 A.3d 1259 (Pa. Cmwlth. 2011) (failure to strictly comply with MPC's notice provision would not result in invalidation of zoning ordinance).

In addition, Objectors contend, to bring a procedural challenge to the adoption of an ordinance, the challenger must present evidence of demonstrable prejudice to succeed on its challenge. Oxford Corp. v. Zoning Hearing Bd. of Borough of Oxford, 34 A.3d 286 (Pa. Cmwlth. 2011). Further, a party bringing a procedural challenge must carry the additional burden of showing the ordinance was not reasonably relied on by other parties. Messina v. E. Penn Twp., 62 A.3d 363 (Pa. 2012).

Here, Objectors argue, evidence was presented that a summary of the ordinance was published in the Reading Eagle Newspaper notifying all landowners that the Township was considering a township-wide zoning ordinance. R.R. at 1215a-16a. Moreover, Objector John Miravich testified the affected landowners received mailed notice reflecting the proposed zoning change. R.R. at 422a. In fact, there was testimony that over at least a six-month period, the Township held public forums that landowners could attend and comment on the zoning changes.

R.R. 422a-23a; see also R.R. 423a-25a. Further, maps were displayed allowing landowners to identify how their properties may be affected by the zoning change.

Objectors point out Landowner claimed the new ordinance was not delivered to the County Law Library. However, Landowner did not present testimony by the law librarian working at the time the new ordinance was considered. Instead, it produced a witness who only began working there five years after the Township considered the new ordinance. Moreover, Landowner's representative acknowledged he did not know where the law library was and never went there to review an ordinance even though he was Landowner's representative working on the land development plan.

In addition to the claim that the new ordinance was not provided to the law library, Objectors maintain, Landowner claimed the new ordinance was not provided to the County Planning Commission. However, the County Planning Commission representative testified the new ordinance was provided for review. The County Planning Commission's records showed the new ordinance was received and the Planning Commission specifically commented on the new ordinance and returned its comments to the Township. Objectors point out that Landowner appears to claim that because some minor changes to the new ordinance were made after the comments were received that the Township was required to resubmit the new ordinance to the Planning Commission. However, Objectors maintain, Landowner cites no authority that suggests these rounds of comments were required when the changes were minor and made at the Planning Commission's request.

Further, Objectors argue, Landowner received substantial notice of the ordinance change. Landowner's representative testified he knew where the Township building was, previously attended Township meetings and reviewed the Township documents. R.R. at 138a-48a.

Also, Objectors contend the new ordinance was available at the Township building. Objectors argue further testimony was offered and was unrefuted that the Township provided prior notice and set up workshops and notified each landowner in writing. R.R. at 1147a. Again, none of this testimony was refuted. Additionally, Objectors assert, Landowner offered no testimony that it was prejudiced by not receiving more detailed notice.

Objectors further maintain they offered significant testimony that they relied on the new ordinance. R.R. at 425a-27a. Additionally, testimony was offered that Objectors now cannot develop their property under the old ordinance that Landowner seeks to apply only to it. R.R. at 426a-27a. As set forth in Messina, Objectors maintain, a challenger, like Landowner here, must show there was no reasonable reliance by others that the new ordinance was valid. Here, Objectors argue, Landowner presented no evidence to refute the fact that after 10 years it was reasonable for other landowners to believe the new ordinance was valid and could no longer be challenged.

Objectors further contend, in addition to the fact that they could reasonably rely on the new ordinance as it was on the books for over 10 years, Objectors never received notice that Landowner filed an application challenging

26

the new ordinance. Although the Township attempted to show a memorandum was prepared internally to schedule a hearing and notify Objectors, no hearing was scheduled and no evidence that a hearing was scheduled was ever presented.

Moreover, Objectors assert, no evidence was presented that Objectors ever received any notice. Instead, the parties conspired to hide Landowner's special treatment from Objectors. In fact, Objectors contend, the only testimony on this issue was the testimony that no hearing occurred. R.R. at 419a-20a. Objectors assert they had a due process right that, to the extent an ordinance was going to be challenged, it would be done timely, see Messina, rather than 5 or 10 years after the initial application was filed and placed on hold by Landowner. As the evidence showed, Objectors assert, through the minutes of the Township meeting, it was Landowner who prepared and presented the settlement agreement to the Township, which placed the procedural challenge on hold without notice to Objectors. Objectors maintain it was not the Township's fault that Landowner chose to proceed in a way that would allow only the Township and Landowner to know Landowner intended to overturn the new ordinance as it applied only to the subject property.

Objectors argue the MPC requires timely prosecution of a zoning application. Here, Landowner placed its validity challenge in limbo thus prejudicing Objectors who were never notified the application was filed. Objectors assert it would deny them due process to allow Landowner not to prosecute its challenge in a timely manner.

In response, Landowner argues the trial court correctly agreed that the enactment of the new ordinance in 2005 was procedurally defective. Landowner contends that, based on the history and voluminous record, the new ordinance was adopted with significant procedural flaws. Landowner asserts Objectors' argument concerning the ZHB's ability to hear the case is improper as a matter of law, as the procedural validity challenge hearing was correctly advertised and all parties attended the 2015 hearings consistent with this Court's directive in Metro Dev V. Landowner maintains the trial court properly recognized the procedural flaws and sustained the ZHB's decision. Importantly, it contends, the trial court agreed that the phantom procedural requirements suggested by Objectors in the zoning appeal process are not binding on any of the parties.

To that end, Landowner argues, Objectors' arguments regarding notice of an application are not grounded in any legal requirement in the MPC, the Second Class Township Code, the zoning ordinance or this Court's directive in Metro-Dev V. As such, no legal basis exists to adopt the novel argument that the case should be dismissed because in 2005 no parties knew an application was filed. Objectors' failure to cite supporting authority reveals the frivolous nature of their notice argument.

Landowner further maintains the procedural flaws in the 2005 adoption of the new ordinance are undisputed. During the 2015 ZHB hearings, Objectors did not present evidence to suggest the new ordinance's adoption procedure was not flawed. Further, the Township admitted the new ordinance was

flawed, and this Court recognized the procedural defects inherent in the ordinance adoption in Metro Dev V.

In addition to the various admissions of invalidity, Landowner contends, the ZHB record is filled with procedural flaws including, but not limited to: (1) failure to properly summarize the ordinance in the advertisement; (2) failure to have the proper municipal official advertise the ordinance; (3) making substantial changes without additional comment by the County or Township Planning Commissions; (4) failure to file a copy with the County Law Library prior to adoption; and, (5) failure to advertise the time and place of the meeting in which the new ordinance would be considered.

Landowner further maintains the trial court properly found that strict compliance with each MPC provision was the proper standard here. Thus, one flaw was enough to sustain Landowner's burden. As noted, Landowner argues, countless errors occurred here. As the trial court properly concluded, based on this Court's directive, the law in place in 2005 was to be applied to the new ordinance's adoption process. See Metro Dev V. At that time, Glen-Gery Corp. v. Zoning Hearing Board of Dover Township, 907 A.2d 1033 (Pa. 2006), and its progeny controlled, mandating the strictest of all standards in ordinance adoption, requiring satisfaction of every statutory provision or an ordinance was void.

Landowner argues this appeal is simply one more roadblock in a series of legal objections that were filed without a valid legal basis, but rather in an effort to halt Landowner's development.

Landowner further contends the hearing protocol for the procedural validity challenge satisfied the MPC. It asserts the crux of Objectors' argument is that no advertisement occurred when the procedural validity challenge was filed with the ZHB. Landowner argues nothing in any statute suggests that advertisement of a procedural validity challenge *application* must occur. Further, Objectors cite no such authority. Rather, the only advertisement requirement for a ZHB is prior to a hearing. See Section 908 of the MPC, 53 P.S. §10908.

Here, Landowner argues, the issue of the procedural hearing process was already decided. See Metro Dev V. Further, in Miravich v. Township of Exeter (Pa. Cmwlth., No. 2066 C.D. 2013, filed July 24, 2014), 2014 WL 3697542 (unreported) (Miravich III), the same Objectors requested the matter proceed before the ZHB and raised no issue with that hearing process through extensive briefing. Landowner asserts Objectors' procedural complaints are only intended to confuse and complicate a 10-year-old legal dispute.

Landowner further argues that, in 2005, as with today, Section 908 of the MPC governs hearing procedures before the ZHB. It provides a specific notice provision:

> The board shall conduct hearings and make decisions in accordance with the following requirements:
>
> (1) Public notice shall be given and written notice shall be given to the applicant, the zoning officer, such other persons as the governing body shall designate by ordinance and to any person who has made timely request for the same. Written notices shall be given at such time and in such manner as shall be prescribed by ordinance or, in the absence of ordinance provisions, by

30

> the rules of the board. In addition to the written notice provided herein, written notice of said hearing shall be conspicuously posted on the affected tract of land at least one week prior to the hearing.

53 P.S. §10908(1) (emphasis added). Landowner argues Section 908(1.2) of the MPC discusses receipt of the application, but only states the timing of the hearing after the application is received. See 53 P.S. §10908(1.2). Nothing in Section 908 suggests any special handling or notice of the application itself upon receipt.

Landowner further asserts all parties agree that no hearing on its procedural validity challenge occurred in 2005. All parties agree that until 2016 the ZHB did not rule on its validity challenge. Before the ZHB, Objector Miravich admitted the zoning ordinance in place before the 2005 application had no procedure for notifying anyone of the mere receipt of an application on a procedural validity challenge. R.R. at 436a. Rather, the MPC and the ordinance simply required notice of *the hearing*. In any event, Landowner contends, during the 2015 ZHB hearings, the Township's solicitor specifically asked if there were any objections to the hearing and Objectors' counsel did not raise any. R.R. at 131a.

Landowner also argues that in Metro Dev V, this Court directed the ZHB to hear the merits of the procedural challenge, *not* to debate whether there was a flaw in the underlying application, as that issue was long since withdrawn. Id. Since this Court's decision in Metro Dev V, hearings were scheduled and property owners were notified, two attorneys represented Objectors' interests,

subpoenas were issued for several witnesses and the property was posted as evidenced by the exhibits entered into evidence, without objection.

Finally, Landowner notes, Objectors assert their due process rights were violated. Landowner argues this contention lacks merit based on this Court's decision in <u>Metro Dev V</u>, which cured any irregularity based on the 2005 settlement agreement. Landowner contends due process assertions would only have merit if the 2015 ZHB hearing was not advertised, posted or the mandates of the MPC violated. Here, all parties admit the 2015 process was satisfied. As such, as a matter of law the process was proper and no due process violation occurred.

For its part, the ZHB reiterates the reasoning set forth in its decision sustaining Landowner's procedural validity challenge and declaring the new ordinance void *ab initio*. The ZHB argues that, despite Objectors' attempts to confuse and complicate the matter by rearguing and raising issues previously addressed or ruled on in the years of protracted litigation in this case, the scope of the issue here is straightforward.

To that end, in <u>Metro Dev V</u>, this Court was clear in its remand and directive that the ZHB should: (1) hear the procedural validity challenge to the new ordinance as contained in Landowner's application; and, (2) decide the merits of the validity challenge under the statutory procedure in effect in 2005.

Based on the law in effect in 2005 and upon review of the credible evidence, the ZHB contends it did not err in finding Landowner's application was

filed within 30 days of the effective date of the new ordinance, and the Township did not strictly comply with the statutory procedures required to enact a zoning ordinance amendment; therefore, the new ordinance is void *ab initio*.

The ZHB maintains the 11 procedural defects that it found existed are supported by the credible testimony and substantial evidence it received at the hearings. The Township neither challenged nor disputed any of the evidence submitted at the hearings to support these procedural defects. Additionally, the Township Manager's testimony can be fairly construed as an admission that the procedural defects occurred. R.R. at 227a-244a.

The ZHB contends Objectors did not submit any credible evidence to overcome the ZHB's finding that Landowner met its burden in establishing these procedural defects. Rather, Objectors appear to assert these defects are waivable. The ZHB asserts this is not a valid statement of the law in effect in 2005. Rather, because Landowner's application was filed within 30 days of the effective date of the new ordinance, the enactment process had to strictly comply with the MPC. The ZHB asserts that, if Landowner filed its application more than 30 days from the date of enactment, Objectors' argument that the defects may be waivable could have merit. Here, however, Landowner filed its application within 30 days of enactment; thus, Objectors' position is misplaced and the cases they cite are distinguishable.

The ZHB further points out that Objectors argue that because Landowner may have known the new ordinance was being considered in 2005, it

was not prejudiced by the procedural defects and, as a result, Landowner should now be barred from prosecuting its challenge. The ZHB argues this contention lacks merit as this Court's decision in Metro Dev V required the ZHB to hear the challenge and, based on applicable legal standards, the ZHB and the trial court were required to determine if the Township strictly complied with the statutory procedure for enactment.

The ZHB further contends, although Objectors argue their rights were violated through application of the strict compliance standard, they cite no precedential or persuasive authority other than Messina to support their theory. And, the ZHB argues, Messina is distinguishable. In Messina, the challengers waited 12 years to challenge a zoning ordinance. Here, the challenge was made less than 30 days from enactment. Additionally, Objectors did not rely on the new ordinance without knowledge of Landowner's challenge to its procedural validity. Instead, as evidenced by the history of this case and related cases, Objectors were fully aware of the issues involved and the potential for invalidation of the new ordinance. In fact, Objectors previously sought to prevent invalidation of the new ordinance in Miravich I. Thus, Objectors' reliance on Messina is misplaced and is insufficient to overcome this Court's directive to the ZHB in Metro Dev V.

### 2. Analysis

Initially, we note, this Court may not substitute its interpretation of the evidence for that of the ZHB. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005). It is the function of a ZHB to weigh the evidence before it. Id. The ZHB is the sole judge of the credibility of witnesses and the weight afforded their testimony. Id. Assuming the record contains substantial

34

evidence, we are bound by the ZHB's findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence. Id. A ZHB is free to reject even uncontradicted testimony it finds lacking in credibility. Id.

In Metro Dev V, this Court required the ZHB to "decide the merits of [Landowner's] procedural validity challenge under the statutory procedure in effect in 2005." Slip Op. at 11, 2014 WL 3697529 at *5.

In 2005, Section 909.1(a)(2) of the MPC stated, in relevant part:

(a) The [ZHB] shall have exclusive jurisdiction to hear and render final adjudications in the following matters:

(2) Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption which challenges shall be raised by an appeal taken within 30 days after the effective date of said ordinance. …

Further, in 2005, Section 5571(c)(5) of the Judicial Code ("Appeals generally") stated:

(c) Exceptions.—

* * * *

(5) Ordinances, resolutions, maps, etc.-- Notwithstanding section 909.1(a)(2) of the … [MPC], questions relating to an alleged defect in the process of enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision, including appeals and challenges to the validity of land use ordinances adopted pursuant to the [MPC], shall be raised by appeal or challenge

35

commenced within 30 days after the intended effective date of the ordinance, resolution, map or similar action. As used in this paragraph, the term 'intended effective date' means the effective date specified in the ordinance, resolution, map or similar action or, if no effective date is specified, the date 60 days after the date the ordinance, resolution, map or similar action was finally adopted but for the alleged defect in the process of enactment or adoption.

Although not in effect at the time Landowner filed its procedural validity challenge in 2005, it is helpful to acknowledge the current statutory framework, including the applicable burdens of proof for procedural validity challenges (adopted in 2008), which states, as relevant:

**(b) Appeals of defects in statutory procedure.--**

(1) <u>Any appeal raising questions relating to an alleged defect in statutory procedure shall be brought within 30 days of the intended effective date of the ordinance</u>.

(2) Except as provided in subsection (c), it is the express intent of the General Assembly that this 30-day limitation shall apply regardless of the ultimate validity of the challenged ordinance.

**(c) Exemption from limitation.**--An appeal shall be exempt from the time limitation in subsection (b) if the party bringing the appeal establishes that, because of the particular nature of the alleged defect in statutory procedure, the application of the time limitation under subsection (b) would result in an impermissible deprivation of constitutional rights.

**(d) Presumptions.--**Notwithstanding any other provision of law, appeals pursuant to this section shall be subject to and in accordance with the following:

36

(1) An ordinance shall be presumed to be valid and to have been enacted or adopted in strict compliance with statutory procedure.

(2) In all cases in which an appeal filed in court more than two years after the intended effective date of the ordinance is allowed to proceed in accordance with subsection (c), the political subdivision involved and residents and landowners within the political subdivision shall be presumed to have substantially relied upon the validity and effectiveness of the ordinance.

(3) An ordinance shall not be found void from inception unless the party alleging the defect in statutory procedure meets the burden of proving the elements set forth in subsection (e).

**(e) Burden of proof.--**Notwithstanding any other provision of law, an ordinance shall not be found void from inception except as follows:

(1) In the case of an appeal brought within the 30-day time limitation of subsection (b), the party alleging the defect must meet the burden of proving that there was a failure to strictly comply with statutory procedure.

(2) In the case of an appeal which is exempt from the 30-day time limitation in accordance with subsection (c), the party alleging the defect must meet the burden of proving each of the following:

(i) That there was a failure to strictly comply with statutory procedure.

(ii) That there was a failure to substantially comply with statutory procedure which resulted in insufficient notification to the public of impending changes in or the existence of the ordinance, so that the public would be prevented from commenting on those changes and intervening, if necessary, or from having knowledge of the existence of the ordinance.

(iii) That there exist facts sufficient to rebut any presumption that may exist pursuant to subsection (d)(2) that would, unless rebutted, result in a determination that the ordinance is not void from inception.

**(f) Void ordinances.--**A determination that an ordinance is void from inception shall not affect any previously acquired rights of property owners who have exercised good faith reliance on the validity of the ordinance prior to the determination.

42 Pa. C.S. §5571.1(b)-(f) (emphasis added).

Further, as of 2005, "[t]he precedents of [the Supreme] Court [were] consistent in holding that statutory publication requirements [were] mandatory and that ordinances adopted without strict compliance [were] void." Glen-Gery, 907 A.2d at 1041 (quoting L. Gwynedd Twp. v. Gwynedd Props., Inc., 591 A.2d 285, 288 (Pa. 1991)). Thus, the Supreme Court's "'consistent view [was] that the statutory steps for enactment of ordinances [were] mandatory and nonwaivable," and "the procedures established by the legislature for the enactment of ordinances must be followed strictly in order for an ordinance to be valid[.]" Id. (quoting L. Gwynedd Twp., 591 A.2d at 286, 287).

Here, Landowner filed its procedural validity challenge within 30 days of the effective date of the new ordinance. F.F. No. 46. Where, as here, a challenge is filed within 30 days of the ordinance's effective date, a challenger must only prove the municipality failed to strictly comply with statutory procedures. Hawk v. Eldred Twp. Bd. of Supervisors, 983 A.2d 216 (Pa. Cmwlth. 2009). As set forth above, this remains the law currently in Pennsylvania. See 42 Pa. C.S. §5571.1(e)(1).

The ZHB here determined Landowner proved that the enactment of the new ordinance did not strictly comply with numerous procedural requirements in Sections 609 and 610 of the MPC. As of 2005, Section 609 of the MPC ("Enactment of zoning ordinance amendments") stated, as relevant (with emphasis added):

(a) For the preparation of amendments to zoning ordinances, the procedure set forth in section 607 for the preparation of a proposed zoning ordinance shall be optional.

(b) (1) Before voting on the enactment of an amendment, the governing body shall hold a public hearing thereon, pursuant to public notice…. In addition, if the proposed amendment involves a zoning map change, notice of said public hearing shall be conspicuously posted by the municipality at points deemed sufficient by the municipality along the tract to notify potentially interested citizens. The affected tract or area shall be posted at least one week prior to the date of the hearing.

(2) (i) In addition to the requirement that notice be posted under clause (1), where the proposed amendment involves a zoning map change, notice of the public hearing shall be mailed by the municipality at least 30 days prior to the date of the hearing by first class mail to the addressees to which real estate tax bills are sent for all real property located within the area being rezoned, as evidenced by tax records within the possession of the municipality. The notice shall include the location, date and time of the public hearing. A good faith effort and substantial compliance shall satisfy the requirements of this subsection.

(ii) This clause shall not apply when the rezoning constitutes a comprehensive rezoning.

(c) In the case of an amendment other than that prepared by the planning agency, the governing body shall submit

39

each such amendment to the planning agency at least 30 days prior to the hearing on such proposed amendment to provide the planning agency an opportunity to submit recommendations.

(d) If, after any public hearing held upon an amendment, the proposed amendment is changed substantially, or is revised, to include land previously not affected by it, the governing body shall hold another public hearing, pursuant to public notice ….

(e) If a county planning agency shall have been created for the county in which the municipality proposing the amendment is located, then at least 30 days prior to the public hearing on the amendment by the local governing body, the municipality shall submit the proposed amendment to the county planning agency for recommendations. …

53 P.S. §10609(a)-(e).

In addition, Section 610(a) and (b) of the MPC stated (with emphasis added):

(a) Proposed zoning ordinances and amendments shall not be enacted unless notice of proposed enactment is given in the manner set forth in this section, and shall include the time and place of the meeting at which passage will be considered, a reference to a place within the municipality where copies of the proposed ordinance or amendment may be examined without charge or obtained for a charge not greater than the cost thereof. The governing body shall publish the proposed ordinance or amendment once in one newspaper of general circulation in the municipality not more than 60 days nor less than 7 days prior to passage. Publication of the proposed ordinance or amendment shall include either the full text thereof or the title and a brief summary, prepared by the municipal solicitor and setting forth all the provisions in reasonable detail. If the full text is not included:

40

(1) <u>A copy thereof shall be supplied to a newspaper of general circulation in the municipality at the time the public notice is published</u>.

(2) <u>An attested copy of the proposed ordinance shall be filed in the county law library</u> or other county office designated by the county commissioners, who may impose a fee no greater than that necessary to cover the actual costs of storing said ordinances.

(b) In the event substantial amendments are made in the proposed ordinance or amendment, before voting upon enactment, the governing body shall, at least ten days prior to enactment, readvertise, in one newspaper of general circulation in the municipality, a brief summary setting forth all the provisions in reasonable detail together with a summary of the amendments. …

53 P.S. §10610(a), (b).

Here, the ZHB determined the following 11 procedural deficiencies occurred in the enactment of the new ordinance:

- The Reading Eagle Notice does not provide 'the time and place' of the meeting on July 25, 2005 that the [Supervisors] would consider the enactment/passage of the Draft Ordinance as required by 53 P.S. §10609(b)(1) and 53 P.S. §10610(a);

- The Reading Eagle Notice does not provide either 'the full text' of the Draft Ordinance or 'a brief summary which lists provisions in reasonable detail' or even any details of the Draft Ordinance as required by 53 P.S. §10609(b)(1) and 53 P.S. §10610(a);

- Although the Reading Eagle Notice does indicate that copies of the Draft Ordinance may be obtained

41

at the Township Building, the Reading Eagle Notice does not state that 'copies of the proposed ordinance or amendment may be examined without charge or obtained for a charge not greater than the cost hereof' as required by 53 P.S. §10610(a);

- The Reading Eagle Notice was prepared by the [Township] Manager and not the [Township] Solicitor as required by 53 P.S. §10610(a);

- A notice of the public hearing on July 18, 2005 and proposed enactment at the July 25, 2005 meeting was not conspicuously posted along tracts of land within [the] Township that were the subject of zoning map changes under the Draft Ordinance as required by 53 P.S. §10609(b)(1);

- A notice of the public hearing on July 18, 2005 and proposed enactment at the July 25, 2005 meeting was not mailed to the owners of the tracts of land within [the] Township that were the subject of zoning map changes under the Draft Ordinance as required by 53 P.S. §10609(b)(2);

- An attested copy of the Draft Ordinance or any revised version thereof was not filed in the [County Law Library] at any time prior to July 25, 2005 as required by 53 P.S. §10610(b)(2);

- A copy of the full text of the Draft Ordinance or any revised version thereof was not filed in the Reading Eagle at any time prior to July 25, 2005 as required by 53 P.S. §10610(b)(1);

- Prior to adoption on July 25, 2005, Ordinance 596, which contained substantial amendments from the Draft Ordinance, was not submitted to the [County Planning Commission] for review as required by 53 P.S. §10609(e);

- Prior to adoption on July 25, 2005, Ordinance 596, which contained substantial amendments from the Draft Ordinance, was not submitted to the

42

[Township Planning Commission] for review of all of the changes made at the July 25, 2005 meeting as required by 53 P.S. §10609(c); and

- Prior to adoption on July 25, 2005, Ordinance 596, which contained substantial amendments from the Draft Ordinance, was not re-advertised for public notice in the Reading Eagle for a public hearing or enactment at a public meeting as required by 53 P.S. §10610(b).

ZHB Op., Concls. of Law No. 3(a)-(k). The record supports the ZHB's determinations that the Township did not strictly comply with several requirements set forth in Sections 609 and 610 of the MPC in enacting the new ordinance.

More specifically, among other things, the notice published in the Reading Eagle: (1) did not provide the time and place of the meeting at which the Supervisors would consider passage of the new ordinance; (2) did not provide either the full text of the new ordinance or the title and a brief summary setting forth all provisions in reasonable detail; and, (3) was not prepared by the Township Solicitor. C.R., Item #9, Ex. 12; R.R. at 1216a; see also 145a-47a.

In addition, the Township Manager, who prepared the advertisement of the new ordinance, acknowledged he had no proof that a copy of the full text of the new ordinance was provided to the Reading Eagle or the County Law Library. R.R. at 231a-32a; see also R.R. at 148a, 210a-11a. The Township Manager also testified he could not recall whether notices were sent to those property owners whose properties were being rezoned as a result of the enactment of the new ordinance. R.R. at 263a. In light of these obvious procedural defects, it is not necessary to address the remaining deficiencies found by the ZHB.

43

Further, based on these defects, no error is apparent in the ZHB's conclusion that Landowner, which filed its challenge within 30 days of the effective date of the new ordinance, proved the Township did not strictly comply with the MPC's procedural requirements when enacting the new ordinance. As such, the ZHB properly deemed the new ordinance void *ab initio*.

Nevertheless, citing Messina, Objectors argue Landowner was required to show there was no reasonable reliance on the new ordinance by other landowners in the Township. Contrary to this assertion, the challenge at issue in Messina was filed *12 years* after the enactment of the ordinance at issue (and more than 30 days after the effective date of the 2008 amendment to Section 5571.1 of the Judicial Code). Where, as in Messina, a procedural validity challenge is filed more than two years after an ordinance's intended effective date, a challenger must rebut the presumption that the municipality and its residents substantially relied on the validity and effectiveness of the ordinance. See 42 Pa. C.S. §5571.1(e)(2). The same is not true for challenges filed within 30 days of an ordinance's effective date, such as Landowner's challenge here.

To that end, unlike in Messina, Landowner filed its procedural validity challenge within 30 days of the effective date of the new ordinance. Thus, Landowner was only required to show the Township failed to strictly comply with statutory procedures, a burden which, as set forth above, it carried here.

Further, in Nockamixon, Bartowski, and Oxford, cited by Objectors for the proposition that strict compliance was not required here, the challengers did

44

*not* file their procedural validity challenges within 30 days of the enactment of the ordinances. Thus, those cases are distinguishable.

In addition, while Objectors claim they did not receive notice of Landowner's procedural validity challenge when it was filed in 2005, as the trial court explained:

> [T]here is no dispute that [Objectors] were notified of and participated in the hearings held in 2015 on [Landowner's] procedural challenge to the [n]ew [o]rdinance. At that time, [Objectors] were given the opportunity to be heard regarding … their argument for improper notice in 2005 …. Further, MPC Section 908(1) provides that public notice [of a ZHB hearing] be given 'to the applicant, the zoning officer, such other persons as the governing body shall designate by ordinance and to any person who has made a timely request of the same.' 53 P.S. § 10908(1). Accordingly, not only was notice to [Objectors] not necessarily required of the 2005 proceedings, but due to the settlement agreement, and the several appeals by [Objectors] contributing to the delay, the 2005 proceedings were never held. For [Objectors] to suggest that they are harmed by the delay in the issuance of a final unappealable resolution of the challenge to the ordinance is somewhat disingenuous since much of the delay was occasioned by [Objectors'] own appeals. Needless to say, every party has the right to file reasonable good faith appeals, however, in the face of an adverse ruling, to suggest that the delay occasioned by the appeal prejudiced [Objectors] is, at the very least, somewhat circular. …

Tr. Ct., Slip Op., at 6. Additionally, as explained above, in <u>Metro Dev V</u>, this Court directed the ZHB to decide the merits of Landowner's procedural validity challenge, originally filed in 2005. In light of this and the fact that Objectors fully

participated in the ZHB proceedings on Landowner's procedural validity challenge with the aid of counsel, Objectors received all process due.

Finally, while Objectors argue Landowner had actual notice of the enactment of the new ordinance, as the Supreme Court stated in Schadler v. Zoning Hearing Board of Weisenberg Township, 850 A.2d 619, 627 n.12 (Pa. 2004):

> [T]he procedural requirements for the enactment of a law are nonwaivable, and when the lawfulness of the enactment is in question, the law is either void or not void, without regard to the identity of the challenger. Meanwhile, finding the notice of an individual litigant to have any bearing on the litigant's ability to challenge the law in the circumstances of this case would lead to the absurd result of a single township ordinance being valid with respect to some citizens and simultaneously invalid with respect to others.

See also L. Gwynedd, 591 A.2d at 287 (citing Fierst v. William Penn Mem. Corp., 166 A. 761, 763 (Pa. 1933)) ("If a published notice fails to satisfy the statutory requirements, the fact that members of the public, or even the appellants themselves, appeared at the hearing does not breathe life into an otherwise void ordinance").

The flaw in Objectors' logic stems from their failure to distinguish between the deprivation of an individual's right to due process (notice), and the deprivation of a shared public right to participate in the proceedings involving adoption of ordinances. See Messina, 62 A.3d at 370; see also Ness v. York Twp. Bd. of Comm'rs, 81 A.3d 1073, 1083 (Pa. Cmwlth. 2013). The parameters of the shared public right to participate in the enactment proceedings are set forth in the

46

MPC's notice requirements. See id. While actual notice of the enactment of the new ordinance would impact an analysis of deprivation of Landowner's individual right to procedural due process, Landowner also may advance the shared public right to participate in the proceedings involving the adoption of the new ordinance. The strict compliance test is applied to prompt assertions of the shared public right to participate in the adoption of the new ordinance. Id.

Thus, while Objectors contend Landowner did not prove prejudice stemming from its purported lack of notice, the fact remains that Landowner filed its procedural validity challenge within 30 days of the new ordinance's effective date. As a result, it only had to prove the Township failed to strictly comply with the required procedures set forth in the MPC, which, as explained above, it did.

### C. Standing
### 1. Contentions

As a final issue, Objectors argue Landowner lacked standing to bring its 2005 procedural validity challenge where it later sold the subject property. Specifically, Objectors assert, when Landowner filed its application, it identified the subject property as 112 Old Friedensburg Road. However, Landowner continued to prosecute its challenge without amending its application. In fact, its failure to amend its application caused the ZHB to post the property of another neighbor, who later purchased the property at that address. Objectors contend Landowner sold the original 112 Old Friedensburg Road, and the new owner objected to the posting of his property. Moreover, that owner informed the ZHB's solicitor that he had no intention of prosecuting the application. As such, the application belongs to that property owner, and he abandoned it. Objectors argue

Landowner did not receive an assignment of the application from the new property owner. Thus, Landowner must file a new application to challenge the new ordinance.

Landowner responds that the ZHB's findings make clear that Landowner had a property interest in the same property as the underlying 2005 validity challenge. F.F. Nos. 1-10. Further, Landowner argues at no point at the outset of the ZHB hearings did Objectors raise any standing issue or issue that the matter could not proceed before the ZHB for resolution of the procedural validity challenge. As properly noted by the trial court, Landowner contends, failure to raise this issue before the ZHB results in waiver. See Sojtori v. Douglass Twp. Bd. of Supervisors, 296 A.2d 532 (Pa. Cmwlth. 1972).

Landowner further argues, even if not waived, Objectors' argument fails. To that end, in 2005, Landowner filed its challenge. Any landowner could properly raise a procedural defect. In 2005, Landowner was such a landowner, and it maintained possession of the subject property as set forth in the 2005 challenge.

More specifically, as referenced by the ZHB at the outset of the hearing and in the advertisement, the subject property consists of approximately 19.2 acres in the Township at Tax Parcel Number 5337-01-19-1692. The advertisement for the ZHB hearing used the same Tax Parcel Number and the same property description. No one disagreed that Landowner maintained ownership of the subject property as advertised in 2015 and as the application stated in 2005. Landowner argues that, while a small lot was excised, it maintained ownership of

the remainder of the property. It asserts the MPC and case law on the definition of "landowner" make clear that standing remains on an original application as long as *any* property interest exists. See Section 107 of the MPC, 53 P.S. §10107. Indeed, in interpreting Section 107, this Court determined a landowner must only possess an interest in the property. See, e.g., Bradley v. Zoning Hearing Bd. of Borough of Milford, 63 A.3d 488 (Pa. Cmwlth. 2013).

In sum, Landowner argues the record makes clear that it owns the subject property and that has not changed. In fact, the entire settlement discussion regarding the design of Landowner's residential development confirms that the underlying property is still owned by Landowner.

Similarly, the ZHB argues, Landowner had standing to bring and prosecute its challenge both in 2005 and in 2015. Landowner's application states that the subject property is located along Old Friedensburg Road in the Township, at 112 Old Friedensburg Road and bearing Tax Parcel Number 5337-01-19-1629. The ZHB notes Landowner sold a portion of the subject property (referred to as the "Bercek Parcel") after it filed its challenge. As a result, Landowner owned the remainder of the subject property and maintained the original Tax Parcel Number, despite the fact that the numerical postal address of 112 Old Friedensburg Road was assigned to the Bercek Parcel. Thus, the ZHB asserts, Landowner was in 2005 and still was in 2015 at the time of the ZHB hearings, the owner of the subject property as identified in its application. Thus, Landowner meets the definition of a "landowner" in Section 107 of the MPC. As a result, it had standing to file the challenge.

49

In addition, the ZHB argues, Objectors did not raise Landowner's alleged lack of standing at all during the ZHB hearings. To the contrary, Objectors did not object to any of the notices, advertisements or postings completed for the 2015 hearings and acquiesced to their admission into the record at the hearings. As stated in the trial court's opinion, Objectors argue, this issue was not properly before the trial court because Objectors did not raise it before the ZHB.

## 2. Analysis

Our review of the record here reveals no indication that Objectors raised any issue regarding Landowner's standing to challenge the procedural validity of the new ordinance before the ZHB. Therefore, as the trial court determined, because no party raised this issue before the ZHB, it is waived. See THW Grp., LLC v. Zoning Bd. of Adjustment, 86 A.3d 330 (Pa. Cmwlth. 2014). Indeed, failure to raise the issue of an applicant's standing to seek zoning relief during the proceedings before the fact-finder results in waiver. Id.; Friedlander v. Zoning Hearing Bd. of Sayre Borough, 546 A.2d 755 (Pa. Cmwlth. 1988).

Nevertheless, even if not waived, Objectors' argument fails. To that end, at the time Landowner filed its procedural validity challenge, the applicable MPC provision permitted the filing of such challenges with the ZHB "by the landowner affected, any officer or agency of the municipality, or any person aggrieved." Section 913.3 of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10913.3. Section 107 of the MPC defines "Landowner" as "the legal or beneficial owner … of land … or other person having a proprietary interest in land."

50

Here, when Landowner filed its procedural validity challenge in 2005, it owned the subject property, which had an address of 112 Old Friedensburg Road. ZHB Op. at 1 n.1. In 2012, Landowner sold a small portion of the subject property comprised of 0.51 acres, referred to as the Bercek Parcel. Id. After the sale, the Bercek Parcel was assigned the numerical address of 112 Old Friedensburg Road, id.; however, the Tax Map Identification Number for the subject property remained the same. R.R. at 510a; F.F. No. 2. More importantly, Landowner retained ownership of the remainder of the subject property, a sizeable portion of which lies within the Township. Because Landowner maintained an ownership interest in the subject property, it had standing to pursue its procedural validity challenge.

## IV. Conclusion

For all the foregoing reasons, we affirm the order of the trial court, which affirmed the ZHB's order sustaining Landowner's procedural validity challenge to the new ordinance.

_____
ROBERT SIMPSON, Judge

51

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sue Davis-Haas, Richard H. Haas, : 
Ida C. Smith, Zildia Perez, Leon : 
Perez, Donna Galczynski, Kevin : 
Galczynski, Alan Ganas, Renee : 
Froelich, Scott Matthews, Patricia : 
J. Miravich, John J. Miravich and : 
William Ryan, : 
                 Appellants :
:   No. 1739 C.D. 2016
         v. :
:
Exeter Township Zoning Hearing :
Board and MetroDev V, LP and :
Exeter Township :

## **O R D E R**

**AND NOW**, this 12th day of July, 2017, the order of the Court of Common Pleas of Berks County is **AFFIRMED**.

 

_____

ROBERT SIMPSON, Judge
