# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Yannaccone, : 
     Appellant : 
         : 
     v. : 
         : 
Lewis Township Board :   No. 887 C.D. 2018
of Supervisors :   Submitted: May 24, 2019


BEFORE:  HONORABLE ROBERT SIMPSON, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY          FILED: August 9, 2019

    James Yannaccone (Yannaccone) appeals, pro se, from the Northumberland County Common Pleas Court's (trial court) May 30, 2018 order declaring the Lewis Township (Township) Board of Supervisors' (Board) Ordinance No. 2014-7 (Ordinance) valid and in full force and effect. Yannaccone presents four issues for this Court's review: whether the trial court erred (1) by recognizing the Township's Zoning Ordinance Committee (ZOC) as a valid planning agency; (2) by holding that the Board's monthly meetings fulfilled the Pennsylvania Municipalities Planning Code's (MPC)[1] requirement that at least one public meeting is held after public notice; (3) by applying Section 5571.1(e)(2) of the Judicial Code[2] to conclude that the Board's procedures in enacting the Ordinance substantially complied with the MPC; and (4) by applying Section 1002.1-A of the MPC.[3] Upon review, we reverse.

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[2] 42 Pa.C.S. § 5571.1(e)(2).

[3] Added by Section 5 of the Act of July 4, 2008, P.L. 319, 53 P.S. § 11002.1-A.

## Background

Since approximately 2005, the Township[4] and Turbotville Borough (Turbotville) participated as a joint planning commission (Joint Commission) for zoning and land use planning. At that time, the Township did not have a separate planning commission.[5] By October 7, 2013 letter, the Board notified Turbotville that it would withdraw from the Joint Commission effective January 1, 2015. The Board subsequently hired consultant KPI Engineering (KPI) to draft a new zoning ordinance exclusively for the Township. Correspondingly, the Township formed ZOC, consisting of Board members, Joint Commission members and Township residents, to provide KPI input during the proposed ordinance drafting process. ZOC met several times in early-to mid-2014 to review KPI's proposed ordinance, which KPI eventually presented to the Board.

The Board sent copies of the proposed ordinance to the Joint Commission and the Northumberland County Planning Commission (County Planning Commission), both of which provided comments to the Board. The Board published notice of a public hearing scheduled on the proposed ordinance for August 14, 2014 in the *Milton Standard Journal*. Township property owners, including Yannaccone, attended the August 14, 2014 hearing. The Board adopted the Ordinance at its regular November 5, 2014 meeting. The Ordinance was effective January 1, 2015. The Board forwarded a copy of the Ordinance to the County Planning Commission on January 19, 2015.

---

[4] The Township is a second class township. A board of supervisors is a second class township's governing body. *See* Section 107 of the MPC, 53 P.S. § 10107; *see also* Section 601 of The Second Class Township Code, 53 P.S. § 65601. Section 601 of The Second Class Township Code specifies that, generally, "[b]oards of supervisors shall consist of three members[.]" Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 65601; *see also* Section 402(a) of The Second Class Township Code, 53 P.S. § 65402(a). The Township's three-member Board consisted of: Willard F. Murray, Jay Douglas Bomberger and Duane M. Blakeney. *See* Original Record, Notes of Testimony, May 23, 2018, Board Exs. 19-20.

[5] The Township's current planning commission was appointed in 2015.

On January 29, 2015, Yannaccone filed a complaint in the trial court against the Board pursuant to Section 5571.1 of the Judicial Code and Section 1002-A(b) of the MPC[6] (relating to ordinance validity challenges),[7] requesting that the Ordinance "be declared void since inception." Reproduced Record (R.R.) at 6a; *see also* R.R. at 7a-8a. Therein, Yannaccone alleged, *inter alia*, that the Ordinance was invalid because ZOC was not the Township's authorized planning agency. *See* R.R. at 6a-7a.

On or about February 16, 2015, the Board filed preliminary objections to the complaint asserting, *inter alia*, that Yannaccone did not have standing. On March 3, 2015, Yannaccone replied to the preliminary objections. The trial court heard argument on July 1, 2015 and, on July 9, 2015, the trial court sustained the Board's objection to standing, but overruled the remaining objections.

On July 21, 2015, Yannaccone filed an amended complaint, wherein he represented that he was a Township landowner. On August 11, 2015, the Board filed its reply and new matter to Yannaccone's amended complaint. On August 25, 2015, Yannaccone filed a reply to the Board's new matter. On November 23, 2015, Yannaccone filed a motion for summary judgment. On December 23, 2015, the Board responded to the summary judgment motion. The trial court held argument on the summary judgment motion on April 6, 2016.

On June 23, 2016, the trial court denied Yannaccone's summary judgment motion. The trial court further ruled that the Board complied with the MPC's procedural requirements for enacting the Ordinance. *See* Yannaccone Br. App. at A-9 – A-10. The trial court also concluded that there was no authority to

---

[6] Added by Section 101 of the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 11002-A(b).

[7] Appeals challenging procedural defects in ordinance enactment or adoption shall be taken to the court of common pleas of the judicial district of the enacting municipality. *See* Section 5571.1(a)(2) of the Judicial Code, 42 Pa.C.S. § 5571.1(a)(2), and Section 1002-A(b) of the MPC.

support Yannaccone's claim that the Ordinance is void *ab initio* simply by virtue of the Board's delay in forwarding the adopted Ordinance to the County Planning Commission. *See* Yannaccone Br. App. at A-10.

After discovery was completed, the trial court held a non-jury trial on May 23, 2018. On May 30, 2018, the trial court ruled in the Board's favor, holding that the Ordinance was valid and in full force and effect for the reasons set forth in the trial court's June 23, 2016 order.[8] *See* Yannaccone Br. App. at A-6. Yannaccone appealed to this Court.[9]

## Discussion

Initially, Section 5571.1(d) of the Judicial Code states, in pertinent part:

[A]ppeals pursuant to this section shall be subject to and in accordance with the following:

---

[8] Yannaccone filed a motion for reconsideration, which the trial court denied on June 13, 2018.

[9] "Our review of a land use appeal when the original action is filed with the trial court is limited to a determination of whether the trial court abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *Kohr v. Lower Windsor Twp. Bd. of Supervisors*, 867 A.2d 755, 757 n.3 (Pa. Cmwlth. 2005). When reviewing mixed questions of fact and law,

> to the extent that factual findings and credibility determinations are at issue, we will accept the trial court's conclusions insofar as they are supported by the record. To the extent that a legal question is at issue, a determination by the trial court will be given no deference and will instead be reviewed *de novo.*

> *In re Condemnation by Urban Redevelopment Auth. of Pittsburgh*, . . . 913 A.2d 178, 183 ([Pa.] 2006) (citation omitted).

*Messina v. E. Penn Twp.*, 62 A.3d 363, 366 (Pa. 2012). "The validity of the zoning ordinance is a question of law subject to our plenary review." *Gladstone Partners, LP v. E. Union Twp.*, 26 A.3d 542, 550 (Pa. Cmwlth. 2011). The trial court filed its opinion on February 14, 2019.

4

(1) An ordinance shall be presumed to be valid and to have been enacted or adopted in strict compliance with statutory procedure.

. . . .

(3) An ordinance shall not be found void from inception unless the party alleging the defect in statutory procedure meets the burden of proving the elements set forth in subsection (e).

42 Pa.C.S. § 5571.1(d). With respect to validity challenges brought within 30 days of the ordinance's effective date, Section 5571.1(e)(1) of the Judicial Code requires that "the party alleging the defect must meet the burden of proving that there was a failure to strictly comply with statutory procedure." 42 Pa.C.S. § 5571.1(e)(1). This Court has ruled that, in light of the validity presumption, the burden to invalidate an ordinance is "extremely heavy." *McClimans v. Bd. of Supervisors of Shenango Twp.*, 529 A.2d 562, 564 (Pa. Cmwlth. 1987).

Section 607 of the MPC requires:

(a) The text and map of **the proposed zoning ordinance**, as well as all necessary studies and surveys preliminary thereto, **shall be prepared by the planning agency** of each municipality **upon request by the governing body**.

(b) In preparing a proposed zoning ordinance, **the planning agency shall hold at least one public meeting pursuant to public notice** and may hold additional public meetings upon such notice as it shall determine to be advisable.

(c) Upon the completion of its work, the planning agency shall present to the governing body the proposed zoning ordinance, together with recommendations and explanatory materials.

(d) The procedure set forth in this section **shall be a condition precedent to the validity of a zoning ordinance** adopted pursuant to this act.

(e) If a county planning agency shall have been created for the county in which the municipality adopting the ordinance

5

is located, then at least 45 days prior to the public hearing by the local governing body as provided in [S]ection 608 [of the MPC, 53 P.S. § 10608 (relating to ordinance enactment)], the municipality shall submit the proposed ordinance to said county planning agency for recommendations.

53 P.S. § 10607 (emphasis added). "Section 607 of the MPC requires that the planning agency present to the governing body completed work in the form of a proposed zoning ordinance." *Kohr v. Lower Windsor Twp. Bd. of Supervisors*, 867 A.2d 755, 757 (Pa. Cmwlth. 2005).

Section 608 of the MPC specifies that, thereafter,

[b]efore voting on the enactment of a zoning ordinance, **the governing body shall hold a public hearing thereon, pursuant to public notice**, and pursuant to mailed notice and electronic notice to any owner of a tract or parcel of land located within a municipality . . . . The vote on the enactment by the governing body shall be within 90 days after the last public hearing. Within 30 days after enactment, a copy of the zoning ordinance shall be forwarded to the county planning agency or, in counties where no planning agency exists, to the governing body of the county in which the municipality is located.

53 P.S. § 10608 (emphasis added).

**Planning Agency**

Yannaccone first argues that the trial court erred by recognizing ZOC as a valid planning agency. He specifically claims that ZOC did not properly exist, since it "sprang out of the void," *see* Original Record, Notes of Testimony, May 23, 2018 (N.T.) at 63, it was not limited to Board members, and its membership exceeded the MPC's limit.

6

Section 607 of the MPC and Section 209.1(b)(2) of the MPC[10] expressly authorize a municipality's governing body to request its planning agency to prepare and present a zoning ordinance. 53 P.S. §§ 10209.1(b)(2), 10607. Section 107 of the MPC defines "planning agency" to include "a planning commission, planning department, or **a planning committee** of the governing body." 53 P.S. § 10107 (emphasis added). Section 201 of the MPC further specifies, in relevant part:

> In lieu of a planning commission or planning department, the governing body **may elect to assign the powers and duties conferred by [the MPC] upon a planning committee comprised of members appointed from the governing body**. The engineer for the municipality, or an engineer appointed by the governing body, shall serve the planning agency as engineering advisor.

53 P.S. § 10201 (emphasis added).

Regarding ZOC's creation, at the May 23, 2018 trial, Yannaccone presented the Board's answers to his interrogatories, wherein the Board admitted that ZOC was appointed by the Board, rather than created by ordinance. *See* Yannaccone Ex. 1 at 2; see also N.T. at 50, 58. Although Section 201 of the MPC specifies that planning commissions and/or planning departments shall be created "by ordinance," 53 P.S. § 10201, it is silent with respect to planning committees. Section 201 of the MPC merely states that the Board shall enlist a planning committee to prepare a proposed ordinance for the Board's review and adoption. 53 P.S. § 10201. Yannaccone does not cite to and this Court's research did not disclose any authority requiring the Board to create ZOC by ordinance.

Board-appointed Township secretary/treasurer Lucinda R. Bomberger (Bomberger) testified at the hearing that ZOC's formation was discussed at regular Board meetings before the Board decided to separate from the Joint Commission.

---

[10] Added by Section 3 of the Act of June 1, 1972, P.L. 333.

7

*See* N.T. at 36. Township Supervisor Willard F. Murray (Murray) recalled at the hearing that the Board assigned ZOC its proposed ordinance drafting task sometime between November 2013 and January 2014, and ZOC met for the first time in January 2014. *See* N.T. at 44, 50, 58. Bomberger confirmed that ZOC's meetings were open to the public, and that the Board's April 3, 2014 meeting minutes reflect that the public was expressly informed of that fact. *See* N.T. at 18, 40; *see also* Board Ex. 5.

Murray also recalled that there were regular ZOC reports at the February to November 2014 Board meetings, and that the March 5, 2014 Board minutes specifically reflected the date and time of the next ZOC session. *See* N.T. at 56-57, 59; *see also* Board Ex. 4. Bomberger explained that she kept the Board's meeting minutes, which reflect that, on February 5, March 5, and April 3, 2014, one of the Board members offered ZOC progress reports. *See* Board Ex. 3 at 2, Board Ex. 4 at 1, Board Ex. 5 at 1, 3; *see also* N.T. at 14-18. She recalled, and the Board's May 7, 2014 meeting minutes recorded, that Township solicitor Benjamin Landon (Landon) reported on ZOC's status and the Board's next steps. *See* Board Ex. 6 at 2; *see also* N.T. at 18-19. Bomberger declared that the Board's June 4, 2014 meeting minutes denote that Landon's declaration that the public hearing on the proposed ordinance would take place on August 14, 2014. *See* Board Ex. 7 at 1; *see also* N.T. at 20-21. Bomberger represented that, at the Board's July 2, 2014 meeting, Landon explained that the Board would advertise the August 14, 2014 hearing 30 days in advance. *See* Board Ex. 12 at 1; *see also* N.T. at 24. Murray testified that the Board's meeting minutes are posted online for public access and review. *See* N.T. at 56-57.

Yannaccone admitted that he did not attend or participate in Board meetings until he saw the Board's public hearing notice relative to the proposed ordinance, which would have been in approximately mid-July 2014. *See* N.T. at 65; *see also* Board Exs. 9, 12; N.T. at 17, 20, 22-24, 57, 60. Because the Board

8

established that ZOC was discussed in 2013, it was created some time in late 2013 or early 2014, and its progress was reported for the better part of 2014, it appears that Yannaccone's claim that ZOC "sprang out of the void," N.T. at 63, stems from his failure to attend the Board's public meetings or keep himself apprised of its activities.

Yannaccone claims in his brief that "[t]he Board has not offered any evidence that [] ZOC [] even existed – [there are] no Board minutes noting the creation of [] ZOC . . . . , [and] no Board minutes noting the appointment of its members . . . ." Yannaccone Br. at 17. However, Yannaccone had the burden of proving that the Board failed to strictly comply with the MPC. 42 Pa.C.S. § 5571.1(d), (e). Because he offered *no* proof that ZOC was improperly created, Yannaccone failed to meet his burden.

Concerning planning committee membership, Murray explained at the hearing that ZOC was made up of 10 people: the three Board members, Joint Commission members, and Township residents who had attended Board meetings and were interested in serving. N.T. at 43, 51, 58. Although Section 202 of the MPC states that planning *commissions* "shall have not . . . more than nine members," the MPC does not similarly limit planning *committees*. 53 P.S. § 10202.

Moreover, Section 201 of the MPC mandates that a planning committee be "comprised of" Board members. 53 P.S. § 10201. "In interpreting a statute, our primary goal is 'to ascertain and effectuate the intention of the General Assembly.' 1 Pa.C.S. § 1921(a)." *Chamberlain v. Unemployment Comp. Bd. of Review*, 114 A.3d 385, 394 (Pa. 2015). Because the phrase "comprised of" is not specifically defined in the MPC, it "must be construed in accordance with its common and ordinary meaning. *See* 1 Pa.C.S. § 1903(a). The law is well-established that the common and approved meaning of a word may be ascertained from an examination of its dictionary definition." *Chamberlain*, 114 A.3d at 394.

9

Merriam-Webster's Collegiate Dictionary (11th ed. 2004) (Merriam-Webster's) defines "comprise" as "to include . . ." *Id.* at 256. Thus, this Court concludes that the use of the phrase "comprised of" in Section 201 of the MPC does not require ZOC to consist solely of Board members, but that ZOC had to *include* Board members, which it did.[11] Accordingly, Yannaccone's claim that ZOC was not valid because its membership exceeded nine members and included non-Board members is without merit.

Based on the foregoing, this Court holds that the trial court properly concluded that ZOC was a valid planning agency.

**Planning Agency Public Meeting After Public Notice**

Yannaccone also asserts that the trial court erred by holding that the Board's monthly meetings strictly complied with the requirement in Section 607(b) of the MPC that "the planning agency shall hold at least one public meeting pursuant to public notice . . . ." 53 P.S. § 10607(b).

Bomberger declared that ZOC's meetings were not officially published or posted. *See* N.T. at 36. Bomberger and Murray testified that they did not believe such notice was necessary since ZOC assemblages were work sessions at which no decisions were made but, instead, ZOC formulated recommendations on KPI's proposed ordinance drafts for the Board. *See* N.T. at 37-39, 44-45, 50-51, 57-58. Moreover, the Board's March 5, 2014 public meeting minutes specified that ZOC's next meeting would take place on March 20, 2014 from 6:00 to 8:00 p.m. *See* N.T. at 56-57; *see also* N.T. Board Ex. 4.

---

[11] This interpretation is consistent with Section 607(c) of the MPC, which directs that ZOC present the proposed ordinance to the Board. If ZOC consisted solely of the Board's members, that step would be superfluous. *See Commonwealth v. McCoy*, 962 A.2d 1160, 1168 (Pa. 2009) ("We are not permitted to ignore the language of a statute, nor may we deem any language to be superfluous. 1 Pa.C.S. § 1921(a).").

10

The trial court concluded that the Board substantially complied with the statutory requirements and the public was given the opportunity to participate since the Board advertised and conducted its monthly public meetings at which ZOC was discussed, at least one ZOC meeting was announced at an open Board meeting, and the Board's meeting minutes were available to the public.

However, despite that the Board clearly complied with the notice and hearing requirements of Section 608 of the MPC, Section 607(b) of the MPC expressly states that "the planning agency" (ZOC, in this instance) is the entity mandated by Section 607(b) of the MPC to hold at least one public meeting after public notice. 53 P.S. § 10607(b). Therefore, neither the notices published or posted regarding Board meetings or the Board's August 14, 2014 hearing on the proposed ordinance satisfied the strictures of Section 607(b) of the MPC.

Moreover, Section 107 of the MPC defines "public meeting," as that term is used in Section 607(b) of the MPC, as "a forum held pursuant to notice under [Chapter 7 of the Sunshine Act] (relating to open meetings)."[12] 53 P.S. § 10107. Section 703 of the Sunshine Act defines "public notice" as follows:[13]

> (1) For a meeting:[14]

---

[12] 65 Pa.C.S. §§ 701-716.

[13] Section 107 of the MPC defines "public notice" of Board hearings, rather than meetings and, thus, is not applicable in this context. 53 P.S. § 10107.

[14] Section 703 of the Sunshine Act defines "meeting" as "[a]ny prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action." 65 Pa.C.S. § 703. "Deliberation" is defined as "[t]he discussion of agency business held for the purpose of making a decision." *Id.* An "official action" consists of:

> (1) Recommendations made by an agency pursuant to statute, ordinance or executive order.
>
> (2) The establishment of policy by an agency.
>
> (3) The decisions on agency business made by an agency.

11

(i) **Publication of notice of the place, date and time of a meeting in a newspaper of general circulation**, as defined by [Section 101 of the act pertaining to Legal Notices,] 45 Pa.C.S. § 101 (relating to definitions),[15] which is published and circulated in the political subdivision where the meeting will be held, or in a newspaper of general circulation which has a bona fide paid circulation in the political subdivision equal to or greater than any newspaper published in the political subdivision.

(ii) **Posting** a notice of the place, date and time of a meeting prominently **at the principal office of the agency**[16] **holding the meeting** or at the public building in which the meeting is to be held.

(iii) **Giving notice to parties** under [S]ection 709(c) [of the Sunshine Act] (relating to public notice).[17]

---

(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

*Id.* Notably, "merely learning about the salient issues so as to reach an informed resolution at some later time does not in itself constitute deliberation." *Smith v. Twp. of Richmond*, 82 A.3d 407, 416 (Pa. 2013).

[15] The term 'newspaper of general circulation' is defined as '[a] newspaper issued daily, or not less than once a week, intended for general distribution and circulation, and sold at fixed prices per copy, per week, per month, or per annum, to subscribers and readers without regard to business, trade, profession or class.' 45 Pa.C.S. § 101(a).

*Pacella v. Washington Cty. Tax Claim Bureau*, 10 A.3d 422, 426 (Pa. Cmwlth. 2010).

[16] Since the Township is a political subdivision of the Commonwealth, its governing body (the Board) and committees thereof (ZOC) are agencies governed by the Sunshine Act. The term "agency" is defined in Section 703 of the Sunshine Act as "[t]he body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all the following: . . . any board . . . of any political subdivision of the Commonwealth . . . ." 65 Pa.C.S. § 703. "Political subdivision" is defined therein to include "[a]ny . . . township . . . ." *Id.*

[17] Section 709(c) of the Sunshine Act states:

In addition to the public notice required by this section, the agency holding a meeting shall supply, upon request, copies of the public notice thereof to any newspaper of general circulation in the political subdivision in which the meeting will be held, to any radio or television station which regularly broadcasts into the political subdivision and to any interested parties if the newspaper, station or

12

65 Pa.C.S. § 703.[18]

The record evidence before the trial court established that ZOC meetings were public, but they were neither published in a newspaper of general circulation nor posted as Section 703 of the Sunshine Act mandates. Merely referencing a ZOC meeting during one Board session and notating the Board's minutes with ZOC updates does not rise to the level of the required public notice. Because none of ZOC's meetings took place after "public notice," the Board did not substantially comply with Section 607(b) of the MPC, and the trial court erred by concluding otherwise.

**Application of Section 5571.1(e)(2) of the Judicial Code**

Yannaccone further contends that the trial court erred by applying Section 5571.1(e)(2) of the Judicial Code to conclude that the Board's procedures in enacting the Ordinance substantially complied with Section 607(b) of the MPC.

Section 5571.1(b)(1) of the Judicial Code directs that "[a]ny appeal raising questions relating to an alleged defect in statutory procedure [for ordinance enactment] shall be brought within 30 days of the intended effective date of the ordinance." 42 Pa.C.S. § 5571.1(b)(1). Yannaccone filed his complaint in the trial court within 30 days of the Ordinance's effective date in accordance with Section 5571.1(b)(1) of the Judicial Code.

Section 5571.1(e) of the Judicial Code provides that

---

party provides the agency with a stamped, self-addressed envelope prior to the meeting.

65 Pa.C.S. § 709(c).

[18] In his brief, Yannaccone interprets the Sunshine Act to demonstrate that ZOC is a Board committee and, thus, subject to the same public notice requirements. See Yannaccone Br. at 20. However, since Section 607(b) of the MPC specifies that "the planning agency [ZOC] shall hold at least one public meeting pursuant to public notice," 53 P.S. § 10607(b), a Sunshine Act analysis to reach the same result is unnecessary.

13

[n]otwithstanding any other provision of law, an ordinance shall not be found void from inception except as follows:

(1) **In the case of an appeal brought within the 30-day time limitation** of subsection (b), the party alleging the defect must meet the **burden of proving** that there was a **failure to strictly comply with statutory procedure**.

(2) In the case of an appeal which is exempt from the 30-day time limitation in accordance with subsection (c), the party alleging the defect must meet the burden of proving each of the following:

> (i) That there was a failure to strictly comply with statutory procedure.

> (ii) That there was a failure to substantially comply with statutory procedure which resulted in insufficient notification to the public of impending changes in or the existence of the ordinance, so that the public would be prevented from commenting on those changes and intervening, if necessary, or from having knowledge of the existence of the ordinance.

> (iii) That there exist facts sufficient to rebut any presumption that may exist pursuant to subsection (d)(2) that would, unless rebutted, result in a determination that the ordinance is not void from inception.

42 Pa.C.S. § 5571.1(e) (emphasis added).

This Court has expounded: "Section 5571.1 [of the Judicial Code] . . . employs a multi-tiered system in which the standards for challenging an ordinance vary depending on the amount of time that has passed since its adoption." *Hawk v. Eldred Twp. Bd. of Supervisors*, 983 A.2d 216, 221 (Pa. Cmwlth. 2009). Specifically,

> [w]here[, as here,] a challenge is filed within 30 days of the ordinance's effective date, the party alleging a defect must prove there was a failure to strictly comply with statutory procedure. However, where a challenge is filed outside the 30-day period, a party must prove its right to an exemption from the deadline. This is accomplished by evidence showing the municipality's failure to substantially comply

14

> with applicable procedures prevented the public from commenting on the ordinance. *Hawk* . . . . If the challenging party meets its burden of proof, the challenged ordinance is void *ab initio. Id.*

*Davis-Haas v. Exeter Twp. Zoning Hearing Bd.*, 166 A.3d 527, 534 (Pa. Cmwlth. 2017) (quotation marks omitted).[19]

The trial court in this case cited to *Bartkowski Investment Group, Inc. v. Board of Commissioners of Marple Township*, 18 A.3d 1259 (Pa. Cmwlth. 2011), to support its conclusion that, even if ZOC's meetings were not properly advertised in strict compliance with the statute, Yannaccone was not harmed since he had ample opportunity to make his concerns about the proposed ordinance known before it was enacted. However, in *Bartkowski*, since the procedural challenge was not filed within 30 days of the ordinance's effective date, Section 5571.1(e)(2) of the Judicial Code's substantial compliance standard applied. "Where, as here, a challenge is filed within 30 days of the ordinance's effective date, a challenger must only prove the municipality failed to strictly comply with statutory procedures." *Davis-Haas*, 166 A.3d at 547.

Because substantial compliance is not an applicable standard in the instant case, *Bartkowski* is inapposite. *See Davis-Haas* (wherein this Court similarly concluded that *Bartkowski* is distinguishable because the challenge was not filed within 30 days of the ordinance's enactment). Accordingly, the trial court erred by applying Section 5571.1(e)(2) of the Judicial Code to conclude that the Board's procedures in enacting the Ordinance substantially complied with Section 607(b) of the MPC.

---

[19] Although *Davis-Haas* involved challenges brought under Sections 609 and 610 of the MPC, 53 P.S. §§ 10609, 10610 (relating to validity challenges to zoning ordinance amendments, rather than new ordinances), and the subject challenge pre-dated the enactment of Section 5571.1(e) of the Judicial Code, the Court conducted an analysis of that provision applicable here.

**Application of Section 1002.1-A of the MPC**

Yannaccone finally avers that the trial court erred by relying on Section 1002.1-A of the MPC to decide this matter.

The trial court held that Yannaccone was not harmed because the Ordinance did not affect his property.[20]  The trial court specifically concluded:

> [T]he [Ordinance] cannot be rendered void *ab initio* because [Yannaccone] has not met his burden under the statutory requirements under [Section 1002.1-A(d)(2) of the MPC,] 53 P.S. § 11002.1-A(d)(2).  *McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 641 (M.D. Pa. 2014).

> . . . .

> The procedural challenges being made by [Yannaccone] are not cognizable where his substantive property rights were not affected at all.  There was no change to the agricultural zone in which his land was located.

Yannaccone Br. App. A-4 – A-5; Trial Ct. Op. at 4-5.

Yannaccone timely filed his complaint in the trial court within 30 days of the Ordinance's effective date, in accordance with Section 5571.1(e)(1) of the Judicial Code and Section 1002-A(b) of the MPC.  Section 1002-A(b) of the MPC states:

> **Challenges to the validity of a land use ordinance raising** procedural questions or **alleged defects in the process of enactment** or adoption shall be raised by appeal taken directly to the court of common pleas of the judicial district in which the municipality adopting the ordinance is located in accordance with [Section] 5571.1 [of the Judicial Code] (relating to appeals from ordinances, resolutions, maps, etc.).

53 P.S. § 11002-A(b) (emphasis added).

---

[20] Murray reported that Yannaccone's property zoning did not change with the Ordinance's adoption.  *See* N.T. at 60-61.

16

Notwithstanding, the trial court applied Section 1002.1-A of the MPC in analyzing Yannaccone's appeal. In doing so, it committed two errors. First, Section 1002.1-A(a) of the MPC clearly declares: "This section **shall apply to all appeals challenging the validity of *a land use decision*** on the basis of a defect in procedures prescribed by statute or ordinance." 53 P.S. § 11002.1-A(a) (bold and italics emphasis added). Second, Section 1002.1-A(d) of the MPC provides:

> No decision challenged in an appeal pursuant to this section shall be deemed void from inception except as follows:
>
> (1) **In the case of an appeal brought within the time period provided in [S]ection 1002-A(a) [of the MPC**[21] **(requiring that appeals from *land use appeals* be filed within 30 days after a zoning hearing board renders its decision**)], the party alleging the defect must meet the burden of proving that there was a failure to strictly comply with procedure.
>
> (2) **In the case of an appeal exempt from the time period provided in [S]ection 1002-A(a) [of the MPC**] or brought pursuant to [S]ection 108 [of the MPC, 53 P.S. § 10108 (relating to optional notice of municipal action)], the party alleging the defect must meet the burden of proving that because of the alleged defect in procedure alone:

---

[21] Section 1002-A(a) of the MPC states:

> All appeals from all land use decisions rendered pursuant to Article IX [(relating to zoning hearing board proceedings)] shall be taken to the court of common pleas of the judicial district wherein the land is located and shall be filed within 30 days after entry of the decision as provided in [Section 5572 of the Judicial Code,] 42 Pa.C.S. § 5572 (relating to time of entry of order) or, in the case of a deemed decision, within 30 days after the date upon which notice of said deemed decision is given as set forth in [S]ection 908(9) of [the MPC, 53 P.S. § 10908(9)]. It is the express intent of the General Assembly that, except in cases in which an unconstitutional deprivation of due process would result from its application, the 30-day limitation in this section should be applied in all appeals from decisions.

53 P.S. § 11002-A(a).

17

(i) the public was denied notice sufficient to permit participation in the proceedings prior to the entry of the decision to the extent such participation was authorized by statute or ordinance; or

(ii) those whose substantive property rights were or could be directly affected by the entry of the decision were denied an opportunity to participate in proceedings prior to the entry of the decision.

53 P.S. § 11002.1-A(d) (bold and italics emphasis added).

Because the instant case involves an ordinance validity challenge brought in accordance with Section 1002-A(b) of the MPC, rather than a land use appeal filed pursuant to Section 1002-A(a) of the MPC, Section 1002.1-A of the MPC is inapplicable here. Moreover, even if this matter involved a land use appeal, since Yannaccone filed his validity challenge within 30 days, the strict compliance standards in Section 1002.1-A(d)(1) of the MPC would apply, *not* the sufficient notice and direct affect provisions in Section 1002.1-A(d)(1) of the MPC. Accordingly, the trial court erred by relying on Section 1002.1-A of the MPC to decide this matter.

## Conclusion

Based upon the foregoing, although we agree with the trial court's conclusion that ZOC is a valid planning committee subject to the requirements of Section 607 of the MPC, in the process of preparing the proposed ordinance, ZOC failed to hold at least one public meeting pursuant to public notice, as required by Section 607(b) of the MPC. Therefore, the trial court's ruling that the Board substantially complied with Section 607(b) of the MPC in enacting the Ordinance is reversed.

Section 607(d) of the MPC states that "[t]he procedure set forth in [Section 607 of the MPC] shall be a condition precedent to the validity of a zoning ordinance adopted pursuant to [the MPC]." 53 P.S. § 10607(d). This Court has also

specifically ruled that an "ordinance will be invalidated for failure to follow the procedures set forth in [Section 607 of] the MPC regarding notice . . . ." *Kohr*, 867 A.2d at 758. Accordingly, the Board's failure to issue the prescribed public notice of at least one of ZOC's public meetings is a fatal flaw that invalidates the Ordinance's enactment and renders the Ordinance void from inception.[22]

_____
ANNE E. COVEY, Judge

---

[22] "A determination that an ordinance is void from inception shall not affect any previously acquired rights of property owners who have exercised good faith reliance on the validity of the ordinance prior to the determination." 42 Pa.C.S. § 5571.1(f).

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Yannaccone, : 
           Appellant : 
            : 
           v. : 
            : 
Lewis Township Board :      No. 887 C.D. 2018
of Supervisors : 

## O R D E R

AND NOW, this 9th day of August, 2019, the Northumberland County Common Pleas Court's May 30, 2018 order is reversed.

_____
ANNE E. COVEY, Judge